*In re* ESTATE OF FRANK H. MASTERS, JR., Deceased (Albert G. D'Ottavio *et al.*, Petitioners-Appellants and Cross-Appellees, v. Union National Bank and Trust Company of Joliet, n/k/a First Midwest Bank of Joliet, Ex'r of the Estate of Frank H. Masters, Deceased, Respondent-Appellees; Michael Gallagher, Petitioner-Appellee and Cross-Appellant).

Third District   No. 3—86—0361

Opinion filed February 25, 1987.—Rehearing denied April 6, 1987.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellants.

Winston & Strawn, of Chicago (Steven F. Molo and Robert Bodach, of counsel), for appellee Union National Bank and Trust Company of Joliet.

Robert J. Baron and Robert C. Bodach, both of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellee Michael Gallagher.

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal and cross-appeal from a judgment entered in the circuit court of Will County denying certain petitions filed by Albert and Carol Ann D'Ottavio and Michael Gallagher.

Frank H. Masters, Jr., died leaving a will which was admitted in pending probate proceedings. First Midwest Bank/Joliet was named executor of the will and is also the trustee of the land trust which holds title to the decedent's residence. The bank's officer's trust committee met September 26, 1985, and approved a listing agreement for the sale of the residence at an asking price of $267,500, with a minimum of $257,500. The asking price was determined by a real estate market analysis and taking the average of several appraisals. Subsequently, the bank listed the property for a price of $267,500 with Spring Realty. No provision was made in the listing agreement for court approval.

On October 7, 1985, at 8:30 a.m., Gallagher signed a written offer to purchase the property, through Spring Realty, for $257,500. At 9:45 a.m. the D'Ottavios signed a written offer to purchase the property, through Bell Realty (a member of the multiple listing agreement with Spring Realty), for $250,000. Both offers were presented to a bank trust officer at 11:30 a.m. by a representative of Spring Realty. Neither offer was accepted by the bank, nor did the bank make a counteroffer to either prospective purchaser. The same day, Mr. D'Ottavio talked with the president and chief executive officer of the bank, who told him that if he offered the full asking price the committee could act promptly on the offer. Thereafter, the D'Ottavios amended their written offer by increasing the price offered to the listing price of $267,500. During the afternoon of October 7, 1985, the trust officer called the attorney for the estate, who advised the trust officer to include the phrase "subject to court approval" into the offer. That same afternoon the D'Ottavio contract was approved by the committee and was signed by the trust officer on behalf of the trust. The trust officer then notified representatives of both Spring Realty and Bell Realty that the property was sold.

The next day, October 8, 1985, at 8:30 a.m., representatives of Spring Realty presented Gallagher's written offer to purchase the property with the price increased from $257,000 to $272,500. The amendments on the Gallagher offer were initialled at the bank by one of the Spring Realty representatives in the presence of the trust

officer; Gallagher was not present at this meeting nor does it appear he ever personally initialled the change. The trust officer at first refused to sign the Gallagher amended offer, as he had signed the D'Ottavio contract the night before. He finally did so and again inserted the phrase "subject to court approval." It does not appear the trust officer obtained approval of the committee prior to signing the Gallagher contract.

Thereafter, the D'Ottavios petitioned and were allowed to intervene in the pending decedent's estate and filed a petition for declaratory judgment and specific performance. Gallagher also petitioned and was allowed to intervene and filed a petition for approval of his real estate sale contract. The bank, as executor of the estate and as trustee, filed a petition seeking court approval of the Gallagher contract "or for such other and further instructions as the Court may issue with respect to the sale of said property." On April 17, 1986, the court entered a judgment, in writing, finding jurisdiction of the subject matter and the parties, that both the D'Ottavio and Gallagher contracts were invalid, and denying approval of each contract and petition. The court then ordered the bank, as trustee, to "exercise its discretion to conduct a public sale of the property to the highest and best bidder for cash or such terms as it shall deem appropriate after publication of notice of the time, date and place of such sale for a price not less than the maximum offer it has heretofore received at private sale and to thereafter file a report of such sale." From this judgment, the D'Ottavios filed their appeal and Gallagher has cross-appealed.

The D'Ottavios contend on appeal (a) the contract provision "subject to court approval" is a nullity as no court approval is required by the trust agreement, the decedent's will, or any statutory provision and the seller-trustee has sole discretion as to price and terms; (b) if court approval is a condition precedent to the seller's liability on the D'Ottavio contract, the seller has waived the condition by its conduct and cannot claim advantage of the condition to escape its contract with the D'Ottavios; (c) if court approval is a condition precedent to seller's liability on the D'Ottavio contract, the court should have approved the contract fulfilling the condition; (d) the trial court erred in finding and holding the D'Ottavio real estate sale agreement was a mere offer and not a contract; and (e) the trial court had no authority to direct the trustee-seller to exercise its discretion to sell the property at advertised public sale to the highest and best bidder.

Gallagher contends (a) the term in the agreement providing

"subject to court approval" created a condition precedent which had to be met before a contract came into existence; (b) the trustee bank did not waive the condition precedent; (c) the trial court had jurisdiction over the agreements and the authority to order a public sale; and (d) the trial court should have approved the Gallagher offer.

The decedent's will provides in pertinent part the following provisions:

> "Pursuant to the provisions of that certain trust agreement dated the 12th day of September, 1984 between me and UNION NATIONAL BANK AND TRUST COMPANY OF JOLIET, CREATING A TRUST KNOWN AS THE FRANK H. MASTERS, JR. TRUST dated September 12, 1984, my residential property at Timberline Drive, Joliet, Illinois, is to be sold by the Trustee as soon after my death as shall be practicable. ***
>
> *** The foregoing powers shall be exercised by my executor without authorization by any court ***."

The trust dated September 12, 1984, provides in pertinent part the following provisions:

> "[t]he trustee under this agreement will be named as successor-beneficiary of the beneficial interest presently owned by the insured under that trust agreement dated the fourth day of June A.D., 1982 and known as UNION NATIONAL BANK AND TRUST COMPANY OF JOLIET, trust number 4107, the property of which trust is titled to the insured's residence, located at Timberline Drive, Joliet, Illinois. If the aforesaid beneficial interest or the aforesaid real estate shall become an asset of this Trust upon the death of the insured then, notwithstanding anything in this agreement to the contrary, the trustee is directed to sell such property as soon after the death of the insured as shall be practicable. The trustee shall have the power to sell such property at public or private sale, for cash or partly cash and partly credit and upon such terms as it may deem advisable ***."

We note that the decedent's trust gave the trustee the power to sell the decedent's residence and, in fact, directed the trustee to do so as soon as practicable after decedent's death. The will restates this direction and further provides that the executor, which is also the trustee, may do so without court approval. Therefore, the trustee's act of inserting in each contract the provision requiring court approval was done so even though it was not required either by the trust, the will, or any statute.

■■ ■ We believe the insertion of the provision "Subject to Court Approval" in the D'Ottavio contract amounted to conditional acceptance of the offer to purchase rather than merely making the contract a conditional offer. The trustee-bank then owed D'Ottavio the duty to use reasonable efforts to obtain court approval of the contract. Having entered into a binding contract with D'Ottavio subject only to court approval, the trustee should not have entered into a subsequent contract to sell the property to another party. The equitable interest Gallagher acquired under his contract with the trustee was subject to the D'Ottavios' interests under the prior transaction. This follows the general rule that where equities are otherwise equal, the older in point of time prevails. (See generally, 7 Ill. L. & Prac. *Chancery* sec. 86 (1954).) It is conceded that the trustee, Spring Realty, Bell Realty, and Gallagher all had knowledge of the execution of the D'Ottavio contract on the day prior to when the agreement embodying the higher offer was amended and executed. We also question whether the Gallagher contract was otherwise a valid and enforceable contract, since the record indicates he never personally initialled the amendment to his original contract. He merely had a person from Spring Realty insert his initials for him. Without unduly lengthening this opinion by discussing the laws of agency, we believe Spring Realty was the seller's agent and question the Spring Realty salesperson's authority to act as an agent for Gallagher without running afoul of a conflict of interest.

Gallagher has relied principally on our decision in *In re Estate of Harmston* (1973), 10 Ill. App. 3d 882, 295 N.E.2d 66, for the proposition that the parties are merely unaccepted bidders and that it stands for the proposition that court approval was required to satisfy the conditional agreements. If we were to follow *Harmston*, we would more properly dismiss both the appeal and cross-appeal in this case, since neither party would have standing to appeal the trial court's decision. We find, however, that *Harmston* is distinguishable from the present case. An administrator's sale such as was the subject of *Harmston* is subject to court approval as provided for by statute. The outcome of *Harmston* would have been the same whether or not the "subject to court approval" language was present. The *Harmston* administrator could not have accepted the contract period.

■ We also have not been given, nor have we found, any authority for the action taken by the trial court in ordering a public auction for the property. There is no support in the trial court's order nor in the trust or otherwise. Therefore, we hold the trial court

erred in declaring neither offer to be valid and binding and in ordering the trustee to conduct a public auction of the property. We remand this matter for the entry of an order by the trial court approving acceptance by the trustee of the D'Ottavio contract.

Reversed and remanded.

WOMBACHER and HEIPLE, JJ., concur.